IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-02185-PAB-STV

ARTHUR MOORE,

    Plaintiff,

v.

SERGEANT TRESCH,

    Defendant.

**ORDER**

This matter is before the Court on the Recommendation of United States Magistrate Judge [Docket No. 84]. Plaintiff filed objections on May 29, 2020. Docket No. 85. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**I. BACKGROUND**[1]

Plaintiff is an inmate who, during the period relevant to this dispute, was

---

[1] The following facts are undisputed unless otherwise indicated. Plaintiff has filed four complaints, although the third has not been accepted for filing and is currently pending. *See* Docket Nos. 1, 10, 20, 74. As a result, plaintiff's second amended complaint is the operative complaint. Plaintiff has added additional supporting facts to the third amended complaint but his claims, Eighth Amendment Failure to Protect and First Amendment Retaliation, did not change from the second to the third amended complaint. *See* Docket Nos. 20, 74. Although the second amended complaint is the operative complaint, the Court draws its facts from all of plaintiff's complaints and briefs. *See* 28 U.S.C. § 1746 (stating that complaints are filed under penalty of perjury); *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (noting that a complaint may be treated as an affidavit); *Wimbish v. Nextel W. Corp.*, 174 F. Supp. 3d 1275, 1277 n.1 (D. Colo. 2016) (reasoning that pro se briefs may be considered as if they were submitted under penalty of perjury).

incarcerated at Buena Vista Correctional Facility ("Buena Vista").  Docket No. 20 at 2-3. On April 12, 2018, a fight between two gangs occurred at Buena Vista.  Docket No. 64 at 1.  As a result of the fight, one of the gang members was transferred to plaintiff's cell and the gang members, and plaintiff, were put on lockdown.  *Id.*; Docket No. 74 at 10.

On May 2, 2018, plaintiff submitted a Step 1 grievance related to his placement in lockdown.  Docket No. 74 at 10.  His grievance was denied because he was "documented as being associated with a disruptive group," therefore placing him on "RFP" status, which requires him to be removed from general population.  *Id*.  Plaintiff then filed a Step 2 grievance stating that, due to a prior altercation with a gang member, he was not to be housed with gang-affiliated inmates.  *Id.* at 11.  On June 18, 2018, his grievance was denied because he could not utilize the grievance process for "[f]acility placement, unit, cell and bunk assignment," but rather had to "submit an in house move request."  *Id*.  The next day, plaintiff filed a Step 3 grievance, reiterating that he was not to be housed with gang members.  *Id.* at 12.  On July 28, 2018, plaintiff's Step 3 grievance was denied, which denial stated that the grievance process was "not a valid method for review" of his RFP status and thus plaintiff "ha[d] not exhausted your administrative remedies."  *Id.* at 12-13 (emphasis omitted). Nevertheless, the gang member was moved from plaintiff's cell after Buena Vista responded to the Step 3 grievance.  Docket No. 64 at 1.

Plaintiff had placement issues again a year later.  On June 10, 2019, defendant allegedly told plaintiff that nothing could prevent defendant from placing a gang member in plaintiff's cell.  Docket No. 20 at 7; Docket No. 64 at 2-3.  Around the same

2

time, a gang member was moved into plaintiff's cell. Docket No. 64 at 3. On June 11, 2019, plaintiff filed a Step 1 grievance regarding defendant's statements and plaintiff's new cell mate. Docket No. 20 at 7. On June 30, 2019, plaintiff alleges that defendant threatened plaintiff for filing a civil complaint and grievances against him. *Id.* at 4. On July 5, 2019, plaintiff's Step 1 grievance was denied because Buena Vista staff were following facility housing policy. *Id.* at 7. Plaintiff did not file a Step 2 or Step 3 grievance. Docket No. 48-1 at 3, ¶¶ 17-18.

Plaintiff filed suit on July 31, 2019, Docket No. 1, and brings claims for retaliation in violation of the First Amendment and failure to protect his safety in violation of the Eighth Amendment. *See* Docket No. 20 at 4; *see also* Docket No. 74 at 4-8 (containing plaintiff's proposed third amended complaint for the same claims). On February 4, 2020, defendant filed a motion for summary judgment, arguing that plaintiff failed to exhaust administrative remedies. Docket No. 48.[2] Magistrate Judge Varholak issued his recommendation on defendant's motion for summary judgment on May 18, 2020. Docket No. 84.

## II. LEGAL STANDARD

The Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). An objection is "proper" if it is both timely and specific. *United States v. One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996). A specific objection

---

[2] Defendant also filed a motion to dismiss, *see* Docket No. 47, which is not before the Court.

3

"enables the district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute." *Id.*

In the absence of an objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate. *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). The Court therefore reviews the non-objected to portions of the recommendation to confirm that there is "no clear error on the face of the record." Fed. R. Civ. P. 72(b), Advisory Committee Notes. This standard of review is something less than a "clearly erroneous or contrary to law" standard of review, Fed. R. Civ. P. 72(a), which in turn is less than a de novo review. Fed. R. Civ. P. 72(b). Because plaintiff is proceeding pro se, the Court will construe his objections and pleadings liberally without serving as his advocate. *See Bellmon*, 935 F.2d at 1110.

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An

issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

### III. ANALYSIS

#### A. First Amendment Retaliation

Plaintiff has not objected to that portion of the magistrate judge's recommendation that plaintiff failed to exhaust administrative remedies for his First Amendment retaliation claim. The Court has reviewed the non-objected portions of the

recommendation to satisfy itself that there is "no clear error on the face of the record." Fed. R. Civ. P. 72(b), Advisory Committee Notes.  Based on this review, the Court has concluded that this portion of the recommendation is a correct application of the facts and the law.

### B.  Eighth Amendment Failure to Protect

Magistrate Judge Varholak recommends that defendant's motion for summary judgment be granted as to plaintiff's Eighth Amendment claim because plaintiff failed to exhaust administrative remedies which were available to him.  Docket No. 84 at 14, 16-17.  Specifically, the magistrate judge concluded that there was no evidence that 1) the administrative process was not available to grieve what plaintiff complained about and 2) plaintiff was intimidated such that he was afraid to file any sort of grievance.  *Id.*

Plaintiff makes two primary objections to the first conclusion.[3]  First, that plaintiff's decision to file a Step 1 grievance knowing it was unavailable does not make the grievance process available.  Docket No. 85 at 2.  Second, that plaintiff has an agreement with the Colorado Department of Corrections that prevents him from being placed in a cell with a gang member and, as a result, he need only prove that a gang member was placed in his cell to demonstrate an Eighth Amendment violation.  *Id.* at 2-3.  The Court addresses each in turn.

The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be

---

[3] Plaintiff does not object to the second conclusion and, after review, the Court finds that there is "no clear error on the face of the record."  Fed. R. Civ. P. 72(b), Advisory Committee Notes.  The Court concludes that this portion of the recommendation is a correct application of the facts and the law

brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has described the PLRA as a "mandatory exhaustion" statute and has "reject[ed] every attempt to deviate . . . from its textual mandate." *See Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016). "Because the prison's procedural requirements define the steps necessary for exhaustion, an inmate may only exhaust by properly following all of the steps laid out in the prison system's grievance procedure." *Little v. Jones*, 607 F.3d 1245, 1249 (2010). The only "textual exception to mandatory exhaustion" in the PLRA is the "availability" of administrative remedies. *Ross*, 136 S. Ct. at 1858. The Supreme Court has noted three types of administrative remedies that, "although officially on the books, [are] not capable of use to obtain relief." *Id.* at 1859. First, "an administrative procedure is unavailable when . . . it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Third, a remedy can become unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

  The Court agrees with plaintiff that an attempt to use an otherwise unavailable administrative remedy does not render the remedy available for exhaustion purposes. If there are truly no available administrative remedies for plaintiff to exhaust, then his decision to attempt to utilize a futile procedure would not somehow make him subject to

the exhaustion requirement of the PLRA.  However, that is not what the evidence demonstrates.

The undisputed evidence shows the following: first, according to an affidavit of Tony DeCesaro, a Step 3 Grievance Officer, plaintiff did not file a Step 2 or Step 3 grievance for his Eighth Amendment claim.  Docket 48-1 at 3, ¶¶ 16-17.  Plaintiff does not dispute that he did not file any further grievances after Step 1 relating to his Eighth Amendment failure to protect claim.  See Docket No. 56 at 2; Docket No. 85 at 2.  Second, AR 850-04, the Colorado Department of Corrections regulation governing the grievance process, states that the grievance process may not be used to review bunk assignments.  Docket No. 48-1 at 9.  Third, bunk assignments due to protective custody have their own administrative procedure governed by AR 650-02.  Id.; see also Colorado Department of Corrections, Offender Group Living: Protective Custody, AR 650-02 (2019), https://drive.google.com/file/d/1cZSUhJgfZhdWtlpS5MYoszZRlNPtMmV8/view.  Fourth, the response to plaintiff's Step 1 grievance gave no indication that plaintiff could not grieve a failure to protect.  Docket No. 20 at 7 ("[I]t appears that staff are following policy.  Your grievance is denied, you have not exhausted your means of addressing this issue.").  Fifth, the grievance process is available to address a range of topics, including failure to protect from violence.  Docket No. 48-1 at 3, ¶ 15; see also id. at 9 ("Offenders will be entitled to invoke this grievance procedure for a broad range of complaints including, but not limited to: policies, conditions, and incidents within the facility that affect the offender personally; actions by employees and offenders and for resolving offender issues relating to health care concerns."

(emphasis omitted)).

The only evidence that could be interpreted as making the grievance process unavailable to plaintiff is AR 850-04, which does not allow inmates to grieve bunk assignments. *See* Docket No. 48-1 at 9. However, AR 850-04 says nothing about the ability of an inmate to file a grievance for a failure to protect him from gang-related violence. The response to plaintiff's Step 1 grievance does not state that the grievance process is unavailable to plaintiff and specifically informs him that he has "not exhausted [his] means of addressing this issue." Docket No. 20 at 7. Additionally, as the magistrate judge concluded, that plaintiff's 2018 grievance was denied says nothing of the general availability of administrative remedies for failure to protect: plaintiff's 2018 grievance primarily related to his placement in lockdown and the denial of that grievance focused on plaintiff's RFP classification. *See* Docket No. 84 at 12 n.9 (citing Docket No. 74 at 10-13). As a result, plaintiff has provided no evidence that he could not grieve a prison's failure to protect him from gang violence. Moreover, even if the grievance process was not available for this specific gang-related request – bunk assignments due to gang violence – there are other administrative remedies available to plaintiff to address the issue, such as AR 650-02, which governs protective custody. *See* Colorado Department of Corrections, Offender Group Living: Protective Custody, AR 650-02 (2019), https://drive.google.com/file/d/1cZSUhJgfZhdWtlpS5MYoszZRlNP tMmV8/view; *see also Ray v. Aztec Serv. Co.*, 784 F.2d 888, 889 (10th Cir. 1984) ("This court can take judicial notice of agency rules and regulations."). Thus, even assuming that the grievance process was unavailable, there were other administrative remedies

9

available to plaintiff that he did not exhaust.

Plaintiff's second objection is also unpersuasive. First, plaintiff has neither provided evidence of this alleged agreement with the Colorado Department of Corrections nor demonstrated that it would be enforceable. Second, even if plaintiff did have such an agreement, plaintiff would still be required to exhaust administrative remedies. The PLRA is mandatory and, as a result, plaintiff must utilize the administrative process to remedy his complaints before filing a lawsuit. *See Ross*, 136 S. Ct. at 1857. If plaintiff believes that he has an agreement with the Colorado Department of Corrections relating to protective custody, he must raise that issue first with them, not with the courts.[4]

The Court thus finds that plaintiff has failed to exhaust his administrative remedies and agrees with the magistrate judge's recommendation that the defendant's motion for summary judgment should be granted.[5]

## IV. CONCLUSION

It is therefore

---

[4] Plaintiff makes a third argument that Magistrate Judge Varholak was biased in his conclusion by making arguments for defendant. Docket No. 85 at 2. The Court finds no evidence of bias or impropriety in Magistrate Judge Varholak's recommendation.

[5] Plaintiff has also filed a document titled "'Recusal' Plain Error," which the Court construes as a motion to recuse the Colorado Attorney General's Office from representing defendant in this case. Docket No. 86 at 1. Plaintiff alleges that an attorney in the Colorado Attorney General's Office "vouched" for plaintiff's safety. *Id.* As a result, plaintiff seems to be implying the all attorneys in that office have a conflict of interest and may not represent defendant. This argument is unpersuasive. Even if someone in the office "vouched" for plaintiff's safety, it would say nothing of the bias of the two attorneys representing defendant.

**ORDERED** that the Recommendation of United States Magistrate Judge [Docket No. 84] is accepted.  It is further

**ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 48] is **GRANTED**.  It is further

**ORDERED** that plaintiff's claims are dismissed without prejudice.  It is further

**ORDERED** the Recommendation of United States Magistrate Judge [Docket No. 71] is rejected as moot.  It is further

**ORDERED** that plaintiff's Motion to Stay/Injunction [Docket No. 44] is **DENIED** as moot.  It is further

**ORDERED** that defendant's Motion to Dismiss [Docket No. 47] is **DENIED** as moot.  It is further

**ORDERED** that plaintiff's Request [for] Ruling in Objection Motion [Docket No. 83] is **DENIED** as moot.  It is further

**ORDERED** that plaintiff's motion for recusal [Docket No. 86] is **DENIED**.  It is further

**ORDERED** that this case is closed.


DATED August 13, 2020.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge